# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:10cv659

| | |
|---|---|
| SYLVESTER C. JOHNSON, )<br>)<br>**Plaintiff,** )<br>)<br>Vs. )<br>)<br>WAL-MART STORES EAST, L.P.; )<br>WAL-MART STORES EAST, INC.; )<br>WSE MANAGEMENT, LLC; and )<br>WAL-MART STORES, INC., )<br>)<br>**Defendants.** )<br>_____ ) | **MEMORANDUM<br>AND ORDER** |

**THIS MATTER** is before the court on defendants' Motion for Partial Dismissal of the Amended Complaint (#10). A hearing was conducted on May 26, 2011, at which all parties were represented by counsel. Having carefully considered the Amended Complaint as well as the arguments of respective counsel, the court enters the following Order allowing partial dismissal of the Amended Complaint.

## FINDINGS AND CONCLUSIONS

### I.  Background

Plaintiff was employed by defendant Wal-Mart Stores East, L.P., as an associate for 14 years, eventually being promoted to market manager, serving in that position from 2005 until his employment was terminated on January 14, 2009. Amended Complaint ¶¶ 8 & 11. In addition to claims of racial discrimination, the manner is which inventory was accounted for appears to be pivotable to the contested employment decision and runs through plaintiff's supplemental state-law claims. Id. , at ¶ ¶ 8-12.

Prior to termination of his employment, plaintiff contends that he raised concerns

about or opposed the manner in which defendants' associates and managers "manipulated inventory numbers," which he contends was in a manner that violated the North Carolina Securities Act (hereinafter "the Securities Act.") After raising inventory concerns, plaintiff alleges that his employment was terminated by defendants for his own purportedly incorrect handling of internal inventory matters. Id., at ¶¶ 8-12. Plaintiff also alleges that defendants denied him opportunities for promotions. Id., at ¶ 22.

It is undisputed that plaintiff was at all times an at-will employee. Based on the reason given for termination, plaintiff contends that he has been subjected to "self-defamation" (as well as other forms of defamation) as he has told prospective employers the reason why he was terminated. Id., at ¶¶ 42-45. Further, plaintiff contends that an unspecified number of defendants' managers (only one of whom plaintiff identifies in the Amended Complaint) defamed him by stating why he was fired, but does not identify in the Amended Complaint to whom, when, where, or in what context these allegedly defamatory statements were made. Id., at ¶ 39.

## II. Plaintiff's Causes of Action and Defendants' Motion to Dismiss

Plaintiff asserts four causes of action against defendants in his Amended Complaint:

(1) racial discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and/or 42 U.S.C. §§ 1981 and 1981a ("Section 1981");

(2) wrongful discharge in violation of North Carolina public policy, namely the Equal Employment Practices Act ("NCEEPA") and/or the Securities Act;

(3) defamation, including "compelled self-defamation;" and

(4) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA").

Defendants contend that the only claims that survive Rule 12 review are the Title VII/Section

1981 claim and the claim for wrongful discharge in violation of the NCEEPA, but only insofar as such claim is based on race. As to each of those claims, defendants contend that they only survive as asserted against defendant Wal-Mart Stores East, L.P., as the other defendants were not plaintiff's employer.

### III.     Applicable Standard

Until recently, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiff could prove no set of facts which would support its claim and entitle it to relief. Neitzke v. Williams, 490 U.S. 319 (1989); Conley v. Gibson, 355 U.S. 41 (1957). This "no set of facts" standard has been specifically abrogated by the Supreme Court in recent decisions.

First, in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Court held that the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Id., at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration in original).

Post Twombly, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in their complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual

enhancement." Id., at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id., at 570 (emphasis added).

While the Court was clear in Twombly that Conley was no longer controlling, see Twombly, 550 U.S. at 563, and Felman Production Inc. v. Bannai, 2007 WL 3244638, at *4 (S.D.W.Va. 2007), it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009). In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability . . . ." Id. While the court accepts plausible factual allegations made in a complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of

-4-

what the claim is and the grounds upon which it rests." Id., at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. While a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.

IV. Discussion

  A. Dismissal of Additional Defendants

Plaintiff has named a number of Wal-Mart entities that simply were not his employer: Wal-Mart Stores East, Inc..; WSE Management, LLC; and Wal-Mart Stores, Inc. At the hearing, plaintiff argued that he believed these were his employers and that at least one is a general member of Wal-Mart Stores East, L.P.

In the Western District of North Carolina, the court has consistently held that "Title VII precludes a plaintiff from stating a claim against any defendant not named as a respondent in an EEOC charge." Schilling v. Rutherford Pediatrics, P.A., 346 F.Supp.2d 828 (W.D.N.C.2004); Jackson v. Blue Dolphin Communications of North Carolina, ___ F.Supp.2d___, 2004 WL 3216067 (W.D.N.C. 2004). *See also* Mickel v. South Carolina State Employment Service, 377 F.2d 239, 241-42 (4th Cir. 1967). Two exceptions to this requirement have developed where: (1) the named and unnamed parties have the same functional identity, Alvarado v. Board of Trustees, 848 F.2d 457 (4th Cir.1988); or (2) where plaintiff can show that the unnamed employer had actual notice of the EEOC conciliatory efforts and participated in the EEOC proceedings. Bostic v. Wall, 588 F.Supp. 994, 997

(W.D.N.C.1984), aff'd, 762 F.2d 997 (4th Cir.1985). Review of the Amended Complaint provides no evidence of functional identity and there is no indication that any of the individual defendants participated or was invited to participate in the EEOC proceedings. Thus, for Title VII purposes such additional defendants will be dismissed.

Finally, the court has considered whether such additional defendants are appropriately before the court as to the supplemental claims. There is no allegation that the properly named defendant Wal-Mart Stores East, L.P., is a mere shell without sufficient assets to cover any conceivable judgment, that the other defendants were the actual decisionmakers, or that management of such entities allegedly engaged in any tortious conduct toward plaintiff. Further, there is no allegation that full relief can not be afforded to plaintiff with such defendant. Finally, the court has considered the desirability of having the additional defendants in this action from the perspective of providing for complete discovery. The court believes that all necessary witnesses and materials can be obtained through such defendant as it appears that the actions at issue here all involved employees of such corporate entity. Additionally, discovery is liberally allowed in this district and the court will not be longed delayed by any artificial corporate barriers to relevant Rule 26 disclosures or discovery.

The court will, therefore, dismiss Wal-Mart Stores East, Inc., WSE Management, LLC, and Wal-Mart Stores, Inc. The court will refer to Wal-Mart Stores East, L.P., hereinafter as "defendant."

**B.     Wrongful Discharge Claim Based on the North Carolina Securities Act**

Inasmuch as plaintiff has stated a Title VII action for unlawful termination based on race, he has also stated a claim for wrongful discharge in violation of the public policy of North Carolina, as expressed in the NCEEPA. Clearly, it is the public policy of North

Carolina to prohibit racial discrimination in employment.

Plaintiff has also attempted to assert a cause of action for wrongful discharge in violation of the state Securities Act based on internally opposing inventory accounting methods. The Securities Act contains no statement of public policy and there is no reported case in North Carolina which recognizes such a claim. Although North Carolina is an "at-will" employment state, North Carolina has recognized narrow exceptions to the presumption that an employment relationship is terminable at the will of either party. Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 497-99 (1986). An exception exists where an employee has alleged that he or she was discharged in violation of the public policy of the State of North Carolina. Coman v. Thomas Mfg. Co., 325 N.C. 172 (1989). However, not every public wrong amounts to public policy, as the North Carolina Supreme Court has held that "the definition of 'public policy' . . . does not include a laundry list of what is or is not 'injurious to the public or against the public good,'"allowing this area of the law to "mature slowly." Amos v. Oakdale Knitting Co., 331 N.C. 348, 353 & n.1(1992).

Clearly, plaintiff has properly alleged a wrongful termination claim based on the NCEEPA. In also bringing a claim under the Securities Act, plaintiff has attempted to bring a claim that is beyond the developed North Carolina law and this court simply cannot forecast that North Carolina would recognize such a claim inasmuch as improper inventory accounting does not rise to the level of insidious public harm identified in the NCEEPA, but instead concerns a discrete subset of the state's citizens - - stockholders of Wal-Mart - - who are not subject to invidious discrimination and have other lawful means to alleviate harm. The court will dismiss plaintiff's wrongful discharge claim to the extyent it is based on the Securities Act.

**C.    Defamation**

Plaintiff has attempted to allege a claim for defamation based on slander, libel, and "self-compelled defamation." There are two separate torts encompassed by the term "defamation," those being libel and slander.

> Generally, "libel is written while slander is oral." "[W]hen defamatory words are spoken with the intent that the words be reduced to writing, and the words are in fact written, the publication is both slander and libel."

Gaunt v. Pittaway, 135 N.C.App. 442, 447 (1999)(citations omitted).

In this case, plaintiff contends that he has been harmed by both slander and libel. The elements of slander are that a <u>statement</u> (1) was made to a third person and (2) that such statement was false. Andrews v. Elliot, 426 S.E.2d 430, 432 (N.C. Ct. App. 1993). A slander *per se* occurs

> when considered alone without explanatory circumstances [the statement] (1) charges that a person has committed an infamous crime... (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace.

Gaunt, supra, at 448 (citation omitted). As to a claim for libel *per se*, the North Carolina Court of Appeals defines such a claim as follows:

> a <u>publication</u> which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace.

Clark v. Brown, 99 N.C.App. 255, 277, *disc. review denied*, 327 N.C. 426 (1990).

As defendants outline in their brief, plaintiffs have failed to provide the who, what, when and where to state a plausible claim for defamation. Without that essential information, the defendants would be unable to mount a defense as plaintiff has not satisfied the pleading requirements of Rule 8 as discussed above.

Plaintiff also asserts a claim for so called "self-compelled defamation" in the

-8-

employment context. There are two North Carolina Supreme Court cases from the early part of the 20th century that allowed self-compelled defamation claims; however, both were in the context of minor plaintiffs. See Hedgpeth v. Coleman, 183 N.C. 309, 111 S.E. 517 (1922); Davis v. Askin's Retail Stores, Inc., 211 N.C. 551, 191 S.E. 33 (1937). For example, in Davis a Charlotte retailer sent plaintiff, a seventeen year old, a dunning letter after it learned that he had left the City of Charlotte and the State of North Carolina with leased clothing, then a violation of city and state law. In the letter, the retailer threatened the minor with criminal prosecution if he didn't either pay for or return the goods. Upon receipt of the letter, plaintiff in fear of arrest showed or "published" the defamatory letter to adults in an attempt to determine what course of action to take. The Supreme Court sustained the judgment in favor of the minor, reasoning that when such a letter is sent to a minor, the person who sent the letter well knows it will be shown by the frightened minor to others.

Review of North Carolina case law for the past eight decades reveals that North Carolina case law has never recognized a claim for self-compelled defamation in the employment context. Indeed, recognition of such a tort would effectively end the doctrine of at-will employment, discussed supra, inasmuch as an employee aggrieved by termination could create a lawsuit against a former employer simply by telling prospective employers the reason the former employer gave for termination. At the hearing, plaintiff argued that like the young man in Davis v. Askin's Retail Stores, Inc., he too was compelled to tell prospective employers the reason defendant gave for terminating him. The court finds such candor and strength of character to be refreshing; however, unlike the young man faced with possible imprisonment, plaintiff is an adult and was under no legal compulsion to disclose the reason for his termination; instead, he could have simply referred the prospective employer to his former employer, who could have then provided the reason (and perhaps

committed actionable defamation) or declined. The court can find no North Carolina case law recognizing self defamation as a cause of action in the employment arena and the court cannot forecast that the courts of North Carolina would recognize such a cause of action as it would essentially end the doctrine of at-will employment. The court will, therefore, dismiss plaintiff's defamation claims.

* * *

The court notes that plaintiff argued at the hearing that such a cause of action was the only way he could clear his good name. The court recognizes that plaintiff's professional reputation is the primary concern in this litigation. While not a basis for decision, the court disagrees, however, with plaintiff's argument that a defamation claim is the only method for clearing his good name. First, the contents of the termination letter can be discussed as part of mediation and reaching an amicable resolution of this action. Second, upon showing a *prima facie* case of racial discrimination and defendant providing a legitimate, non-discriminatory reason for the termination, plaintiff would then be required to show that the *reasons given by defendant were mere pretext for discrimination*. If plaintiff is successful under Title VII, he will have certainly cleared his good name and the court would have at its disposal the full panoply of equitable remedies to effectuate such a determination.

### D. UDTPA

Plaintiff has also attempted to assert a claim against his former employer under the North Carolina Unfair and Deceptive Trade Practice Act (hereinafter "UDTPA") by alleging that in defaming him, defendant violated the UDTPA. This claim must also be dismissed.

A UDTPA claim is governed by Chapter 75-1.1(a) of the North Carolina General Statutes, which provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Id.

When such provision was enacted into law in 1969, it contained the following statement of purpose:

> The purpose of this section is to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public within this State to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in this State.

N.C. Gen. Stat. 75-1.1(b). See also Edmisten v. Penney Co., 292 N.C. 311 (1977). In response the decision in Edmisten, Section 75-1.1(b) was amended in 1977 to read "[f]or the purposes of this section "commerce" includes all business activities, however denominated...." Id. The UDTPA is, without doubt, a scheme regulating conduct between buyers and sellers and between businesses. See Roberson v. Dale, 464 F.Supp. 680 (M.D.N.C. 1979).

To state a cause of action under the UDTPA, a plaintiff must allege plausible facts that could support the following elements:

(1) conduct constituting an "unfair or deceptive act or practice;"

(2) conduct "in or affecting commerce," and

(3) that such conduct proximately caused actual injury to plaintiff.

Food Lion, Inc. v. Capital Cities/ABC Inc., 951 F. Supp. 1224, 1230 (M.D.N.C. 1996). The UDTPA is not, however, appropriate for resolving employment disputes. The North Carolina courts have long held that "employer-employee relationships do not fall within the intended scope of [the UDTPA]." Buie v. Daniel Int'l Corp., 56 N.C. App. 445, *disc. rev. denied*, 305 N.C. 759 (1982). Despite plaintiff's attempts to bring this case under the "commerce" exception, the plausible facts alleged make it clear that the extent of the relationship between plaintiff and the surviving defendant was that of employee-employer and that all of plaintiff's allegations concern the manner in which his employment was

terminated. The court will, therefore, dismiss the UDTPA claim.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendants' Motion for Partial Dismissal of the Amended Complaint (#10) is **GRANTED**, and

(1) Wal-Mart Stores East, Inc., WSE Management, LLC, and Wal-Mart Stores are **DISMISSED** from this litigation; and

(2) plaintiff's claims for wrongful discharge in violation of public policy as enunciated in the North Carolina Securities Act, defamation (including a claim for "compelled self-defamation"), and violation of the Unfair and Deceptive Trade Practices Act are **DISMISSED** with prejudice.

Defendant Wal-Mart Stores East, L.P. shall file its Answer within 14 days of the filing of this Order.

Signed: June 6, 2011

Max O. Cogburn Jr.
United States District Judge