IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10cv659

| | |
|---|---|
| SYLVESTER JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | ORDER |
| Vs. ) | |
| ) | |
| WAL-MART STORES, EAST, L.P., ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on defendant's Motion for Summary Judgment (#93), Motion to Strike (#118), and Motion for Extension of Time (#124). The motion for summary judgment ripened for decision on February 15, 2013, and the Motion to Strike ripened on March 5. Oral arguments on the Motion for Summary Judgment were held on February 20, 2013. Having carefully considered the motions, the briefs, and the oral arguments, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.    PROCEURAL BACKGROUND**

Plaintiff alleges that defendant Wal-Mart Stores, East, L.P., (hereinafter "Wal-Mart") terminated his employment as a Market Manager because of his race, in violation of Title VII of the *Civil Right Act of 1964*, as amended, 42 U.S.C. §§ 2000e, *et seq.* (hereinafter "Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and North Carolina public policy, as expressed in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. §§ 143-422.1, *et seq.* See Amended Complaint, ¶¶ 25, 30, ECF No. 7. Previously, the court dismissed three other defendants from the action, Wal-Mart Stores East, Inc., WSE Management, LLC, and Wal-Mart Stores, Inc. The

1

court also dismissed plaintiff's claims for wrongful discharge in violation of public policy as enunciated in the North Carolina Securities Act, defamation, and the violation of the Unfair and Deceptive Trade Practices Act. Order, June 6, 2011. ECF No. 23. On February, 25, the parties entered a Stipulation of Voluntary Dismissal dismissing defendant's claim for disparate pay. Order, June 26, 2013, ECF No. 117. Plaintiff's sole remaining claim is, therefore, for wrongful discharge against Wal-Mart.

In moving for summary judgment on this claim, defendant contends that plaintiff cannot prove a *prima facie* case of wrongful discharge because he cannot establish that he was meeting defendant's legitimate expectations at the time of her discharge. Defendant further contends that plaintiff cannot establish that the legitimate, non-discriminatory reason given for his firing - - apparently engaging in gross misconduct by directing subordinates to falsify inventory records - - was mere pretext for racial discrimination.

## II.    FACTUAL BACKGROUND

Since his original hiring in 1996, plaintiff rose steadily through the Wal-Mart hierarchy receiving promotions, awards, and raises; being selected to attend distinguished training programs; and being featured in leadership and diversity campaigns. Def.'s Mem. Supp. Summ. J. 1, Dec. 20, 2012, ECF No. 93-1. By 2005, plaintiff had been promoted to a "Market Manager" position where he was responsible for eight to ten Wal-Mart stores until he was terminated in 2009 amid allegations of dishonest inventory record-keeping practices. Pl.'s Mem. Opp'n. Summ. J. 6, January 21, 2013, ECF No. 99.

The allegations arose in 2008 when a co-manager of one of plaintiff's stores filed an anonymous complaint with defendant's ethics hotline. As a result, Sheree Taylor, a Corporate Fraud Examiner, was assigned to conduct an extensive investigation into the allegations.

According to defendant, this investigation uncovered "various policy violations and unethical conduct by Plaintiff" relating to the falsification of inventory records. Def.'s Mem. 11. While admitting that there were discrepancies between actual and "book" inventory at his stores, plaintiff denies that he committed any unethical conduct and alleges that the investigation was a "sham" to "conceal defendant's discriminatory intent." Pl.'s Mem. 6. After the report underwent various stages of review, it was presented to David Carmon, plaintiff's direct supervisor, by a panel of those involved in the investigation, which "highly recommended" that Mr. Johnson be terminated. Carmon Dep.78:4, October 16, 2012, ECF No. 95-5. While the panel was there to inform and assist Mr. Carmon in deciding whether to terminate plaintiff, the ultimate decision was supposedly his. Id. at 76:3.

While the panel at least tacitly encouraged him to immediately agree with its report and terminate plaintiff, Mr. Carmon felt the need to consider and reflect on the evidence in the report before arriving at any conclusion. Id. at 105:18-25. While Mr. Carmon deliberated, the report was presented to Rosalyn Brewer, Mr. Carmon's supervisor, who likewise recommended that plaintiff be terminated. Ultimately, Mr. Carmon terminated plaintiff in January, 2009.

### III. MOTION TO STRIKE

At the conclusion of oral arguments, the court notified the parties that it would allow supplemental briefing on the motion, if there was any specific evidence the parties wished for the court to consider before entering an order. Plaintiff submitted such supplemental briefing to the court by mail. Dissatisfied with both the content and the manner in which the filing was made, defendant filed a Motion to Strike the supplemental filing. The court will address this motion first, as the supplemental filings could affect the court's ruling on the Motion for Summary Judgment.

With regard to defendant's contention that all filings should be made through the court's ECF system, the court agrees. Plaintiff is advised that any and all filings should be made electronically in the interest of efficiency, timeliness, and preserving the record. If, in addition to the electronic filing, a party wishes to provide the court with a hard copy, it is free, although not required, to do so. With that said, the court cannot see how this failure has harmed defendant beyond, *perhaps*, a minor inconvenience. Defendant's lead counsel was indeed provided with a hard copy of the filing, albeit a few days later than what would have been ideal. Furthermore, the court's directive was as follows:

> If anybody would send me anything from the depositions, any pages to the depositions you specifically want me to look at after today than you think may help me, then get those to me by Monday.

Hr'g Tr., February 20, 2013, ECF No. 120-1 at 38). The court went on to explain, "When you're looking at something going out on summary judgment, you look at everything possible you can look at to try and make a determination." Id. at 46-47. And then finally, "I will take a look at everything that's available." Id. at 47-48. The court's directive was for both parties to submit supplemental briefing, if necessary. While defendant may have received plaintiff's filing after the February 25 deadline, it was free to submit its own supplemental briefing before the deadline – regardless of when, or even if, it received plaintiff's briefing. As such, defendant was not harmed as a result of receiving plaintiff's submission one day after the Monday deadline.

With regards to the scope of the supplemental filing, plaintiff has only strayed slightly, if at all, from the court's directive by submitting emails addressing Mr. Carmon's beliefs. The court will therefore deny defendant's Motion to Strike. The court -- consistent with its promise to "look at everything that's available" -- will, however, grant defendant's motion for leave to file its response to plaintiff's sur-reply *nunc pro tunc*. As the response has already been filed

4

along with its motion, no further filing is necessary and the summary judgment motion is ripe for consideration.

**IV.    SUMMARY JUDGMENT STANDARD**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. That party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Instead, that party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for

the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 252 (1986).

## V. DISCUSSION

As provided in the court's earlier order (# 23), plaintiff's only remaining claim is for wrongful discharge based on race. While plaintiff has asserted claims for wrongful discharge under Section 1981, Title VII, and North Carolina law, the standard for establishing a wrongful discharge is the same under all three provisions. See White v. BVI Waste Servs. 375 F.3d 288, 295 (4th Cir. 2004). As plaintiff has presented no direct evidence of discrimination, plaintiff must establish a prima facie case of discrimination under the burden-shifting analysis set out in McDonell Douglas Crop. v. Green, 411 U.S. 792, 802 (1973).[1]

A *prima facie* case of wrongful termination requires the plaintiff to present evidence upon which a reasonable jury could find that:

> (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2005); see also Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007).

---

[1] With regards to the alleged discriminatory remarks by Mr. Carmon, Pl.'s Memm. 4, plaintiff does not allege they are part of his prima facie case of discrimination and the court will therefore not consider them as such. Furthermore, these remarks, standing alone are not enough to prove discrimination because they do not suggest that Mr. Carmon was motivated by racial animus at the time he terminated plaintiff. See Brinkley v. Harbour Recreation Club, 180 F.3d 598 (608) (4th Cir. 1999) ("[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated, and unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination.")

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show that there were legitimate, non-discriminatory reasons for the employment decisions. If an employer satisfies that requirement, the burden then shifts back to the plaintiff to show that the employer's proffered reasons are false and a pretext to conceal intentional unlawful discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

A. **Plaintiff's Prima Facie Case**

It is undisputed that plaintiff, an African-American, is a member of a protected class; suffered adverse employment action when he was terminated by defendant in mid-January 2009; and was replaced by a similarly qualified applicant outside the protected class. Answer, ¶¶ 3, 10 (ECF No. 12); Def. Mem. Mot. S.J. at 15. As such, the sole disputed element in plaintiff's prima facie case is whether plaintiff was performing his job duties at a level that met Wal-Mart's legitimate expectations at the time he was terminated.

Defendant contends that plaintiff failed to meet expectations by consistently failing to adequately address "shrink related matters" in the stores he managed. As evidence of this failure, defendant cites to plaintiff's "Performance Evaluation," in which plaintiff was given a "Below Expectations" rating in the category "Shrink % Index to Shrink Performance Target". See ECF No. 94-3, B-10. It is evident from this very document, however, that this category only comprises a percentage of the overall evaluation. In other areas, such as the two "Market Business Initiative" categories and the "Assesses and Develops Talent" category, plaintiff received an evaluation rating of "Exceeds Expectations." Id. In fact, plaintiff received a "Solid Performer" rating or higher in every category except the one cited by defendant, and overall, was rated as a "Solid Performer," that is, an employee who "consistently demonstrates performances that meets the job requirements." Id.

7

In addition to his own evaluation, plaintiff also provided the performance evaluations of several Caucasian Market Managers for whom "shrink" was also an "area of opportunity" for these Market Managers as well. Performance Evaluations, Def. Exh. 12, ECF No. 101-2, January 22, 2013. Plaintiff contends that because these Market Managers had "shrink" problems and were not terminated, defendant cannot contend that he was failing to meet Wal-Mart's legitimate expectations due to the shrink levels in his stores.

Wal-Mart further contends, however, that the failure to address shrink problems was not the impetus for plaintiff's termination but foreboding of problems to come. Rather, plaintiff was terminated after the internal investigation uncovered various unethical policies regarding inventory record keeping. Specifically, defendant alleges that plaintiff directed subordinate employees to falsify inventory records in an attempt to improve the shrink ratings for the stores he managed, a violation of the company's Ethics Policy. Def.'s Memm. 16. Plaintiff vehemently denies that he gave any unethical directive; alleges that the investigation was a sham to conceal defendant's discriminatory intent; and insists that Mr. Carmon's deposition and other evidence confirms as much. Specifically, plaintiff insists that Mr. Carmon testified that he refused to believe the results of the investigation and that such refusal constitutes both evidence that Mr. Johnson was meeting Wal-Mart's legitimate employment expectations and also that the proffered legitimate business reason for termination was merely pretext for discrimination.

With regard to Mr. Carmon's deposition, because the parties have vehemently disagreed over the true nature of the testimony, the court will now give it some attention. The disputed line of questioning by plaintiff's attorney was as follows:

> Q: Now, you're aware that Mr. Johnson was asked whether he had given an unethical directive, correct?
> A: I know that he was interviewed.

8

Q: And – he specifically denied having given an unethical directive, correct?

A: Correct.

A: To my recollection, yes, that was his statement. It would all be part of the investigation

Q: And so you essentially determined that Mr. Johnson was a liar, correct?

A: No. I would not classify it that way.

Q: Well, either he gave the directive or he didn't, right?

A: All of the evidence pointed toward the fact that he gave the evidence - - I mean, he gave the directive."

Q: My question is: Either he gave the directive or he didn't; isn't that true?

A: All the evidence through the investigation pointed to the fact that he gave the direction.

Q: Right. But he said he didn't, correct?

A: I am assuming that that would be correct; that he -- I don't recall his exact statement with that.

Q: All right. He didn't agree that he had given an unethical directive, did he?

A: No. I do not believe he did.

Q: So when it comes down to it, you believed the people who accused him, and you didn't believe Mr. Johnson; isn't that correct?

A: The group that do – that did the investigation, the corporate fraud group and the ethics team, along with art Binder and Melody Fogerty, unanimously gave strong recommendations for termination, along with my supervisor. Based on the evidence of the investigation, it was fairly clear as to the

> direction that needed to be taken.
> Q: I'm not sure you're answering the question that I asked. And what I'm asking you is: Didn't you essentially conclude that Mr. Johnson was lying?
> A: Yeah. I'm not going to say –no. I'm not going to sit here and say that I determined Sylvester Johnson was lying. I'm going to tell you that the -- the actions that he took-- because I don't know his statement. The actions that he took and was determined out of investigation by that group determined that he gave directions that was an unethical behavior, which results in termination.

Carmon.Dep. T: 96:11-99:7. Thus, on the surface at least, the deposition testimony reveals that Mr. Carmon, while believing the results of the investigation and ultimately accepting the recommendation of the investigators, refused to openly call Mr. Johnson, a man whom he had known for more than ten years, an outright liar.

However, a closer review of other portions of the deposition and emails provided by defendant reveals that Mr. Carmon may have had doubts about the findings of the investigation. Mr. Carmon testified that after declining to immediately agree with the investigators' recommendation, the results of the investigation were presented to Mr. Carmon's supervisor, Ms. Rosalind Brewer, who also found the report credible and recommended that plaintiff be terminated. Carmon Dep. 101:20-23, 104. It was only then, that Mr. Carmon finally terminated plaintiff. In his deposition, Mr. Carmon attributed the delay in his decision to their personal relationship; the fact that plaintiff has a wife and children; and that he wanted to be sure of his decision as he was "the one who had to live with it." Id. at 106:2-8.

An alternative plausible explanation could be that while doubting the veracity of the report and accusations against plaintiff, Mr. Carmon ultimately felt he had no choice but to accept the overwhelming recommendation of both the team of investigators as well as his superior that plaintiff be terminated. Supporting this contention is an email from Mr. Carmon to Ms. Brewer, sent merely hours after he terminated plaintiff, in which he expressed that he had "concerns over the spirit of the investigation" and referenced other "passed [sic] poor decisions." David Carmon Email, January 14, 20089, WME0009260. A subsequent email from Danny Sorrells, a Divisional Manager for Wal-Mart, confirms that Mr. Carmon had doubts about the veracity of the accusations against plaintiff. Danny Sorrells Email, January 26, 2009, WME0008778 at 2. The email also indicated that Carmon believed that John Dillon, one of plaintiff's former subordinates, was "out to get" plaintiff. Id. Furthermore, Mr. Carmon confirmed in his deposition that he offered plaintiff a recommendation. Carmon Dep. 171:11-13.

Perhaps Mr. Carmon was, as Sorrells put it, "too emotionally involved" to be objective and was simply upset after having to terminate a friend. Sorrells Email. But evidence that suggests "perhaps this" or "perhaps that" is not for this court to weigh. Taking the above evidence in the light most favorable to plaintiff -- as the court is required to do on summary judgment -- a reasonable finder of fact could find that Mr. Carmon, plaintiff's immediate supervisor, thought him to be a satisfactory employee. Such a belief, in conjunction with plaintiff's Performance Rating of "Solid Performer" during the relevant time period could convince a reasonable jury that plaintiff was performing his job duties at a level that met Wal-Mart's expectations. As such, the court finds that plaintiff has established a prima facie case.

**B.     Pretext**

Defendant likewise points to the results of the investigation as the legitimate, nondiscriminatory reason for terminating plaintiff's employment. Defendant's burden at this stage is not one of persuasion, but merely one of production under the burden-shifting scheme of McDonnell Douglas Corp., 411 U.S. 792 (1973). If Wal-Mart successfully proffers such an explanation, the burden then shifts back to plaintiff to show that the proffered reason is merely a pretext. St. Mary's Hnor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

Clearly, defendant has made such a showing. As discussed above, defendant alleges that plaintiff was terminated for consistently failing to address "shrink related matters" and after an internal investigation revealed that plaintiff had directed subordinate employees to falsify inventory records. As also discussed above, however, is the fact that there is evidence which casts doubt on defendant's proffered non-discriminatory explanation for plaintiff's termination - namely, Mr. Carmon's "concerns over the spirit of the investigation" and his apparent unwillingness to accept the findings of the investigation until his superior, Ms. Brewer, also recommended that Mr. Carmon terminate plaintiff. And as the Supreme Court has made clear, such could be sufficient for a jury to find intentional discrimination:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, "[n]o additional proof of discrimination is *required*," 970 F.2d, at 493 (emphasis added).

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993)(footnote omitted). The Court further held, in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000), that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted

justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at 148.

While defendant is correct in its contention that "[i]t is the perception of the decision maker which is relevant," DeJarnette v. Corning Inc., 133 F.3d 293, 299 (1998), "Title VII . . . [does] not limit the discrimination inquiry to the actions or statements of formal decision makers for the employer" when there is evidence that the "formal decisionmaker acts merely as a cat's paw for or rubber-stamps a decision, report, or recommendation made by a subordinate," or in this case a superior. Hill v. Lockheed Martin Logistics Management, Inc., 354 F.3d 277, 290-91 (2004). As explained above, while Mr. Carmon was the ultimate decision maker in plaintiff's firing, there is evidence that he may not have been the actual decision maker. After hesitating to adopt the recommendation of the investigators, Mr. Carmon only terminated plaintiff upon the recommendation of his superior. Furthermore, Mr. Carmon expressed doubts about the "spirit of the investigation" merely hours after terminating plaintiff and offering him a letter of recommendation. While this may have been nothing more than Mr. Carmon's emotional response to terminating a friend, the court finds that the above evidence creates a genuine issue of material fact, however slight, as to whether the proffered non-discriminatory reason was pretextual, and will therefore deny defendant's Motion for Summary Judgment.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendant's Motion for Summary Judgment (#93) is **DENIED**. It is further **ORDERED** that defendant's Motion to Strike Plaintiff's Unauthorized and Unfiled Sur-Reply and, in the Alternative, For leave to File Defendant's Response to Plaintiff's Sur-Reply (#118) is **GRANTED IN PART AND DENIED IN PART**,

13

as explained above. Finally, it is **ORDERED** that defendant's Motion for Extension of Time (#124) is **DENIED.**

Signed: March 20, 2013

Max O. Cogburn Jr.
United States District Judge